UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FOSS MARITIME COMPANY, LLC<br><br>Plaintiff,<br><br>v.<br><br>NAVIGATORS INSURANCE COMPANY, a New York insurance company; ZURICH AMERICAN INSURANCE COMPANY, an Illinois insurance company; and ASCOT INSURANCE COMPANY, a New York insurance company,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Introduction and Nature of Dispute

Plaintiff Foss Maritime Company, LLC brings this action against its commercial liability insurers, Navigators Insurance Company, Zurich American Insurance Company, and Ascot Insurance Company (together, "Navigators") to recover policy benefits that Navigators wrongfully denied as well as actual damages that Foss sustained as a direct and proximate result of that wrongful denial..

After Rose Cay Maritime, LLC asserted a counterclaim alleging that Foss caused property damage to several vessels and sought $18.6 million in damages

COMPLAINT - 1

from Foss (the "Underlying Claim"), Foss gave notice of the Underlying Claim to Navigators, tender its defense and seeking indemnity.

During the nearly two years that have elapsed since then, Navigators performed no discernable investigation, provided no coverage position regarding its duty to defend Foss against Rose Cay's claims, and abandoned its policyholder to fend for itself. These actions and inactions breached the policy and Navigators' duties to Foss under Washington law.

## Parties

1. Plaintiff Foss Maritime Company, LLC ("Foss") is a Washington limited liability company with its principal place of business in Seattle, Washington

2. Defendant Navigators Insurance Company is a New York corporation with its principal place of business in New York.

3. Zurich American Insurance is an Illinois corporation with its principal place of business in Illinois.

4. Defendant Ascot Insurance Company is a New York corporation with its principal place of business in New York.

## Jurisdiction and Venue

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1367(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is a civil action by a Washington company against New York and Illinois entities incorporated or organized under the laws of the United States.

6. The Court has general personal jurisdiction over the defendants because they conduct significant business in the State of Washington and / or committed acts that gave rise to this litigation in this district.

COMPLAINT - 2

7. The Court also has specific personal jurisdiction over the defendants under Washington's Long Arm Statute, RCW 4.28.185, and the due process clauses of the United States and State of Washington constitutions, in that the defendants, individually or acting through their apparent agents, committed one or more of the following: (A) transacted business in Washington (RCW 4.28.185.(a)); and (B) committed, and/or conspired to commit, a tortious act within Washington (RCW 4.28.185(b).

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because each defendant's contacts with this district are sufficient to subject it to personal jurisdiction here; and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the delivery and breach of the insurance policy at issue in this matter.

## Facts

9. From at least 2018 and continuing through 2024, Foss and its affiliates purchased a series of one-year insurance policies that offered "Marine Hull / Liability Package," and to which Navigators Insurance Company subscribed as the lead underwriter.

10. Two of these insurance policies are pertinent to this action. The first was in effect from March 1, 2021 until March 1, 2022, while the second was in effect from March 1, 2022 until March 1, 2023. Foss or its affiliates paid premiums in exchange for each of these two Policies. Foss is a "named Assured" under these Policies.

11. Each of these Policies offered "Comprehensive Marine General Liability" or "Comprehensive Marine Liabilities" coverage, which promised that Navigators:

a. "will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of [] property damage to which this insurance applies, caused by an occurrence."

b. "shall have the right and duty to defend any suit against the Assured seeking damages on account of such [] property damage, even if any of the allegations of the suit are groundless, false or fraudulent[.]"

12. The Policies each contained a Broad Form Liability Endorsement. Among other things, this Endorsement confirmed that the Policy's "Comprehensive Marine General Liability" coverage:

a. did not exclude liability assumed by Foss or any other Assured under "any oral or written contract or agreement relating to the conduct of the named Assured's [i.e., Foss's] business."

b. was not subject to an exclusion for "property damage arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any watercraft owned or operated by or rented or loaned to any Assured."

13. On May 30, 2023, Foss commenced an arbitral proceeding against Rose Cay Maritime, LLC. In that proceeding, Foss sought damages caused by Rose Cay's breaches of the parties' written agreement, under which Foss agreed to provide various project management services in order to return a series of Rose Cay's vessels to service.

14. In a letter dated June 19, 2023, Rose Cay responded to Foss's notice of arbitration with a counterclaim containing a litany of allegations. Among other things, Rose Cay's counterclaim alleged that "Foss's misconduct [] caused

COMPLAINT - 4

substantial damage to RCM's vessels" and asserted that Foss was liable for $18.6 million in damages.

15. On October 2, 2023, Foss's insurance broker, Aon, notified Navigators of Rose Cay's claims and provided Rose Cay's June 19th letter setting out its counterclaim against Foss.

16. On October 16, 2023, Navigators sent an email to Phil Searle of Aon. In it, Navigators first acknowledged receipt of the claim notice and assigned a claim number. Navigators then that "[a]fter the initial review of the claim information you have submitted, or even after additional investigation, we may advise you of Policy terms and conditions which may apply to this claim." Finally, Navigators wrote that "[w]hile this initial review and investigation is ongoing, Navigators acknowledges receipt of this notice of claim under a mutual reservation of rights."

17. On April 19, 2024, Foss (through Aon) wrote Navigators to confirm that it had tendered the defense of Rose Cay's counterclaims to Navigators. Foss noted that Rose Cay had claimed that Foss was liable "for property damage to at least three Rose Cay tugs or barges." Foss also noted three examples in which Rose Cay's counterclaims alleged that Foss caused property damage to Rose Cay's vessels:

> (1) During Hurricane Ida in August 2021, the tug "Joan Rose", and its "barge 295", which were docked in the New Orleans area prior to the storm, washed ashore.
> (2) The "RCM 260" hit a dock at Homeport in New York during a winter storm in January 2022.
> (3) The tug "Anna Rose" hit a dry-dock on 5th April 2022, at Caddell's Shipyard, damaging the dry-dock and the tug.

18. After receiving this tender, Navigators conducted no apparent investigation of the claims, provided no substantive coverage position, failed to appoint defense counsel for Foss, and neither paid nor reimbursed any of Foss's attorney fees or other expenses incurred to defend itself against Rose Cay's counterclaims.

19. An arbitration hearing commenced on January 29, 2025, and continued for several days. Midway through the hearing, the parties reached a settlement in principle on February 7, 2025. They signed a settlement agreement on March 4, 2025. As of March 4, 2025, Navigators *still* had neither accepted nor rejected Foss's defense tender, nor had it offered any substantive or written explanation of its coverage position. Hence, Foss was compelled to defend itself without knowing whether Navigators intended to reserve the right to contest coverage and, if so, what the grounds for contesting coverage might be.

20. This was consistent with Navigators' near non-response to another claim for coverage presented to Navigators by Foss and an affiliate. In that other claim, Foss sought coverage for physical damage to four Foss tugboats. Foss gave Navigators notice of this claim in mid-2023, but Navigators has yet to pay all or any part of that claim. Indeed, Navigators has failed even to provide Foss with a coverage opinion one way or the other, written or otherwise. Navigators' handling of that claim violates the Insurance Fair Conduct Act, the Consumer Protection Act, regulatory claims-handling standards, and Navigators' duty of good faith to Foss.

21. On May 20, 2025, Foss's counsel wrote to Patricia House, a Navigators claim adjuster. Through counsel, Foss asked Navigators to "promptly accept Foss's previous tender of defense against Rose Cay's counterclaims" and to reimburse the fees Foss incurred to defend against Rose Cay's counterclaims. That letter included more details about damage-causing incidents for which Rose Cay alleged Foss was

liable. Foss provided Ms. House with a copy of Rose Cay's pre-hearing brief, explaining how these allegations were within the policy's marine general liability coverage and triggered Navigators' duty to defend.

22.   After receiving this letter, Navigators continued its previous failures to investigate, provide its coverage position, or defend Foss.

23.   On August 5, 2025, Foss wrote to Navigators again, again through counsel. Foss noted that over two years had elapsed since Navigators received notice and a tender of Rose Cay's claims and that, in all that time, "Navigators has not accepted or even acknowledged the tender, a clear breach of its duties to Foss, including its duties to investigate and to defend." Foss called for Navigators to promptly "commit to reimburse Foss's defense costs in the Rose Cay Maritime matter."

24.   To date, Navigators has neither provided a coverage position to Foss nor committed to reimburse Foss's defense costs.

25.   An insurer's investigation and its determination whether it has duty to defend its insured are governed by several professional standards and legal standards. An insurer who refuses to defend its insured in violation of these standards and requirements is guilty of an unreasonable, frivolous, and unfounded denial of coverage and policy benefits. Hence, in deciding whether it has a duty to defend its insured, an insurer:

    a.   Must recognize that "the duty to defend is different from and broader than the duty to indemnify."[1]

    b.   Must also recognize that, while the duty to indemnify exists only if the policy actually provides coverage, "the duty to defend arises

---

[1] *E.g., Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007); *Safeco Ins. v. Butler*, 118 Wn. 2d 383 (1992).

when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage."[2]

c. Must further recognize that "the duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint."[3]

d. May consider only the "eight corners" of the insurance policy and the Underlying Complaint,[4] save for any extrinsic evidence that supports the existence of a duty to defend.[5]

e. Must, when construing the policy and complaint, draw all inferences in favor of coverage. If there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend.[6] An insurer may refuse to defend only if it is clear from the face of the complaint that the policy does not cover the claim.[7]

26. Rose Cay's counterclaims allege that Foss is legally liable for property damage that Foss's actions allegedly inflicted on Rose Cay's vessels. This allegation falls within the Policy's "Comprehensive Marine General Liability" coverage. This coverage is not eliminated by a watercraft, contractual liability, or other exclusion.

---

[2] *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn. 2d. 398, 404 (2010).

[3] *Expedia, Inc. v. Steadfast Ins. Co.,* 180 Wn.2d 793, 802 (2014); *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53 (2007).

[4] *Expedia, Inc. v. Steadfast Ins. Co.,* 180 Wn.2d 793, 803 (2014).

[5] *Id.*

[6] *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn. 2d. 398, 405 (2010).

[7] *Campbell v. Ticor Title Ins. Co.*, 166 Wn.2d 466, 471, 209 P.3d 859 (2009).

Construed in favor of coverage, therefore, Rose Cay's counterclaims alleged a conceivably covered claim.

27. Navigators conducted no apparent investigation or analysis regarding its duty to defend. Nonetheless, had it done so it could not have ruled out the potential for coverage of Rose Cay's counterclaims.

28. Navigators' failure to defend Foss constitutes a refusal to defend and a denial of coverage.

29. When an insurer's refusal to defend is unreasonable, frivolous, or unfounded, an insurer is estopped from asserting that the claim against the insured is not covered by the policy, because "an insurer should be held liable not only in contract [for defense costs]."[8] Coverage by estoppel "creates a strong incentive for the insurer to act in good faith and protects the insured against the insurer's bad faith conduct."[9]

30. All conditions precedent to the filing of this action have occurred, been performed, or been waived.

## Causes of Action

31. Foss incorporates all previous paragraphs into each count below, and each count incorporates all factual allegations from all other counts.

## Count 1: Breach of Contract

32. Navigators' conduct as described above constitutes a breach of its insurance contract with Foss including the breach of its duties to investigate, defend, and settle.

33. Navigators' breach directly and proximately caused damage to Foss in an amount to be proven at trial.

---

[8] *Kirk v. Mt. Airy Ins. Co.*, 123 Wn. 2d 558, 565 (1998).
[9] *Id.*

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

34. The *Olympic Steamship* doctrine entitles Foss to recover the reasonable attorney fees and costs that it has incurred because of Navigators' breach of its obligations under the Policy.

### Count 2: Common Law Bad Faith

35. Navigators owes Foss a duty of good faith and fair dealing.

36. Navigators committed bad faith through several acts and omissions, including but not limited to: failing to conduct a reasonable investigation; failing to respond to coverage correspondence, unreasonably failing to connect the controlling law and language of the policy to the facts of its insured's loss; failing to put Foss's interests on par with its own; and unreasonably denying Foss insurance benefits, including a defense.

37. Navigators' bad faith acts and omissions directly and proximately caused Foss to suffer damages in an amount to be proven at trial. These damages include, but are not limited to, the deprivation of benefits owed to Foss under the Policy, the cost of Foss's defense, the costs of Foss's investigation into its liability and coverage, and the costs associated with bringing this action for coverage, including court costs and attorney fees.

38. Navigators' actions and inactions as described herein were unreasonable, frivolous, or unfounded and therefore constitute bad faith. Navigators' bad faith directly and proximately caused damage to Foss in an amount to be proven at trial.

39. In addition to its monetary damages, Foss is entitled to the remedy of coverage by estoppel.

### Count 3: Consumer Protection Act

40. Each act and omission by Navigators that is described herein was committed in the course of trade and commerce.

COMPLAINT - 10

41. Navigators' acts and omissions as described above violated multiple provisions of WAC 284-30-330 including, but not limited to, subsections (1), (3), (4), (7), and (13); such violations are per se violations of RCW 19.86, Washington's Consumer Protection Act (the "CPA").

42. Navigators' acts and omissions also constitute non-per se violations of the CPA because, as alleged above, such unreasonable acts and omissions were unfair or deceptive, occurred in trade or commerce, and affected Washington's policyholders and the public interest.

43. Such unfair or deceptive acts and omissions directly and proximately caused and continue to cause Foss to suffer damages in an amount to be proven at trial. These damages include, but are not limited to, the deprivation of benefits owed to Foss under the Policy, the cost of Foss's defense, and the costs associated with bringing this action for coverage, including costs and attorney fees.

44. Foss is entitled to recover its actual damages, attorney fees, litigation costs, and treble its actual damages up to $25,000, pursuant to RCW 19.86.090.

### Reservation of Right to Assert IFCA Claim

45. Foss expressly reserves the right to amend this complaint to assert claims under the Insurance Fair Conduct Act ("IFCA") pursuant to RCW 48.30.015(8).

### Prayer for Relief

Foss requests relief as follows:

1. For damages in an amount to be proven at trial;

2. For an award of attorney fees, expert costs, and other costs incurred;

3. For treble damages under the Consumer Protection Act up to the statutory maximum;

4. For prejudgment interest accruing until the date judgment is entered;

COMPLAINT - 11

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

1  plus post-judgment interest at the statutory rate;

2      5.    For a determination that Navigators is estopped to deny coverage; and

3      6.    For such other and further relief as the Court deems just and equitable.

## Jury Demand

Foss demands that a jury try all issues so triable.

DATED this 16th day of September, 2025.

          */s/ Donald B. Scaramastra*
          Donald B. Scaramastra, WSBA No. 21416
          */s/ Carolyn A. Mount*
          Carolyn A. Mount, WSBA No. 55527
          MILLER NASH LLP
          605 5th Ave S, Ste 900
          Seattle, WA 98104
          Tel: (206) 777-7530
          Fax: (206) 340-9599
          donald.scaramastra@millernash.com
          carolyn.mount@millernash.com

          *Attorneys for Foss Maritime Company, LLC*

4934-2105-6870.4